**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ENVIRONMENTAL DEFENSE FUND, 257 Park Ave. S. New York, NY 10010, <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, 1200 Pennsylvania Ave., NW, Washington, DC 20460 <br><br>      Defendant. | Civil Action No. <br><br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

For half a century, the Environmental Protection Agency ("EPA") has set motor vehicle pollution standards that have vastly improved air quality, benefitted public health, and saved consumers money. Those standards are now under threat. The new presidential administration has indicated an intent to undermine, if not seek to eliminate, EPA's motor vehicle pollution standards and to terminate Clean Air Act preemption waivers that allow California to adopt clean transportation standards. These potential changes would increase health-harming and climate-destabilizing pollution from the transportation sector, leaving Americans in communities across the country vulnerable to significant harm from this pollution.

To bring greater transparency to the new administration's deeply harmful plans, Plaintiff Environmental Defense Fund ("EDF") submitted a Freedom of Information Act ("FOIA") request to EPA seeking correspondence and records of EPA transition team members and political appointees related to changes to Clean Air Act vehicle pollution reduction standards and programs, including correspondence with external, non-governmental stakeholders. EPA failed to produce any records or make a determination on this request by the statutory deadline,

1

violating EDF's rights under FOIA and depriving the public of records of clear and immediate public interest.

## INTRODUCTION

1. EDF files this action to enforce the statutory obligations of EPA under FOIA, 5 U.S.C. § 552.

2. On January 20, 2025, President Trump signed an Executive Order titled "Unleashing American Energy" (the "Executive Order") in which he directed all federal agencies, including EPA, to review all existing regulations, orders, guidance documents, policies, and other agency actions related to domestic energy resources, including those specifically related to vehicles. *See* Unleashing American Energy, Exec. Order § 3 (Jan. 20, 2025), https://www.whitehouse.gov/presidentialactions/2025/01/unleashing-american-energy/. The Executive Order states that the new administration's policy is to "eliminate" what it refers to as an "electric vehicle (EV) mandate." *Id.* § 2(e). Further, the Executive Order directs agencies to, within 30 days, "develop and begin implementing action plans to suspend, revise, or rescind all agency actions identified as unduly burdensome" to domestic energy resources "as expeditiously as possible." *Id.* § 3(b).

3. Among the many agency actions potentially subject to this directive are EPA's vehicle pollution reduction programs and standards, which provide substantial reductions in climate pollution and crucial benefits to air quality and public health. *See, e.g.*, Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles, 89 Fed. Reg. 27,842 (Apr. 18, 2024); Control of Air Pollution From New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4,296 (Jan. 24, 2023); Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29,440 (Apr. 22, 2024).

4. The Executive Order also specifically singles out for "terminat[ion]" the "state emissions waivers" related to vehicle standards. Exec. Order § 2(e). These "state emissions waivers" are statutorily authorized waivers of Clean Air Act preemption for California programs that reduce air pollution from vehicles, thereby allowing California to adopt clean transportation standards that are more protective than federal standards. *See* 42 U.S.C. § 7543(b)(1). The Clean Air Act provides other states and the District of Columbia the option to adopt California's more protective standards to reduce air pollution in their jurisdictions. *Id.* § 7507. Sixteen states and the District of Columbia have exercised this authority to adopt some or all of California's vehicle emissions standards.

5. Any action to weaken or eliminate EPA's vehicle pollution reduction programs and standards would result in significant emissions of harmful climate and air pollution from the transportation sector. According to EPA, the light- and medium-duty vehicle emissions standards alone are expected to "avoid more than 7 billion tons of carbon emissions and provide nearly $100 billion of annual net benefits to society, including $13 billion of annual public health benefits due to improved air quality, and $62 billion in reduced annual fuel costs, and maintenance and repair costs for drivers." EPA, *What They Are Saying: Strongest ever pollution standards for cars will reduce pollution, create jobs, cut costs, and ensure companies and workers lead the clean vehicle future* (Mar. 20, 2024), https://www.epa.gov/newsreleases/what-they-are-saying-strongest-ever-pollution-standards-cars-will-reduce-pollution. The heavy-duty GHG emissions standards will avoid an additional approximately 1 billion metric tons of GHG emissions and produce $13 billion in annualized net benefits. EPA, Regulatory Announcement: Final Standards to Reduce Greenhouse Gas Emissions from Heavy-Duty Vehicles for Model Year 2027 and Beyond (Mar. 2024),

https://nepis.epa.gov/Exe/ZyPDF.cgi?Dockey=P101A93K.pdf. Rolling back or rescinding these standards would impair these projected avoided carbon emissions and the resulting benefits.

6. On January 27, 2025, EDF submitted a FOIA request ("FOIA Request") to EPA seeking: (i) all correspondence and records with or between sixteen EPA transition team members and political appointees related to changes to Clean Air Act vehicle pollution reduction programs; and (ii) all correspondence between any of those sixteen individuals and any external, non-governmental stakeholders (including but not limited to seven specific industry stakeholders) related to changes to Clean Air Act vehicle pollution reduction programs. *See* Ex. A at 1-2 (Letter from Erin Murphy, EDF, to National Freedom of Information Officer, EPA).

7. On January 28, 2025, EDF received a form letter from EPA acknowledging receipt of the FOIA Request. Ex. B (Email from Tracey Klosterman, EPA, to Erin Murphy, EDF).

8. Under FOIA, EPA had 20 working days—until February 26, 2025—to make a determination on the FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

9. On February 19, 2025, EDF received an email from EPA stating that the FOIA Request was being placed on the "complex" processing track with an estimated completion date of May 30, 2025, months after the statutory deadline for a determination. Ex. C at 1 (Email from Jonathan Newton, EPA, to Erin Murphy, EDF). But this email was not the "determination" that FOIA requires.

10. To date, EDF has not received EPA's determination on the FOIA Request or any requested records, in violation of the statutory deadlines and other requirements of FOIA.

11. The public, including EDF and its members, has a strong interest in any records related to the current administration's intentions to weaken or eliminate EPA's vehicle pollution

reduction programs and standards. These programs and standards achieve substantial reductions in climate- and health-harming pollution, yet the current administration has made it a policy priority to undermine them.

12. Knowledge of the extent and nature of communications between certain EPA transition team members, political appointees, and external stakeholders is critical for EDF, its members, and the public to understand EPA's decisions relating to the future of its vehicle pollution reduction programs and standards, and will shed light on EPA's interactions with a range of stakeholders, including industry groups. EDF submitted its FOIA Request to bring transparency to these records.

13. EDF requested the information in order to disseminate it to EDF's members, supporters, and the general public. EDF also plans to use its expertise to analyze the records and help the public understand their significance.

14. EPA is unlawfully withholding and unreasonably delaying the release of records requested by EDF and to which EDF is lawfully entitled under FOIA, despite the records' clear salience to current agency decisions with grave implications for public health and welfare.

15. EDF seeks declaratory and injunctive relief declaring that EPA has violated FOIA and an order compelling the agency to promptly release all requested records.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to FOIA, which vests jurisdiction in the U.S. District Court for the District of Columbia. 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under FOIA, a federal statute.

17. Injunctive relief is appropriate under FOIA. 5 U.S.C. § 552(a)(4)(B). Declaratory relief is appropriate under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

18. Venue is proper in this judicial district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

19. Plaintiff EDF is a 501(c)(3) non-profit environmental organization dedicated to finding practical solutions to critical environmental problems through the use of law, policy, science, and economics. EDF has offices throughout the United States, including in the District of Columbia.

20. EDF engages in extensive, daily efforts to inform the public about matters affecting environmental and energy policy, including about vehicles and transportation. EDF has multiple channels for distributing information to the public, including through direct communication with its more than three million members and supporters, press releases, blog posts, and active engagement on social media. EDF is frequently called upon to share its expertise on important environmental issues in the media and in other public forums.

21. EDF has long advocated for measures to protect communities from the deleterious effects of air pollution and climate change. EDF advocated for and supported protective EPA vehicle pollution reduction standards and programs—programs that are now under threat from the Executive Order. These standards and programs significantly reduce greenhouse gas and other harmful air pollution emissions from light-, medium-, and heavy-duty vehicles.

22. EDF is injured by EPA's failure to timely produce public records that were properly requested and to which EDF is entitled under FOIA. *See Zivotofsky v. Sec'y of State*,

444 F.3d 614, 617-18 (D.C. Cir. 2006) ("The requester is injured-in-fact for standing purposes because he does not get what the statute entitles him to receive.").

23. Defendant EPA is an "agency" within the meaning of 5 U.S.C. § 552(f)(1) and is subject to FOIA. EPA has possession and control of the requested records and is responsible for fulfilling EDF's FOIA request.

## LEGAL BACKGROUND

24. FOIA requires a federal agency to make public records "promptly available"—subject to enumerated exemptions—to any person who makes a request that reasonably describes the records sought and complies with the agency's rules for making such a request. 5 U.S.C. § 552(a)(3)(A). FOIA requires the agency to issue a determination on a FOIA request within 20 working days from the date of receipt. *Id*. § 552(a)(6)(A)(i); *see also* 40 C.F.R. § 2.104(a)(1).

25. The agency's determination on a FOIA request shall contain (1) the agency's determination of whether to comply with the request and provide responsive records, (2) the reasons for the agency's determination, and (3) notice of the right of the requester to appeal an adverse determination to the head of the agency. 5 U.S.C. § 552(a)(6)(A)(i).

26. Mere notice of the agency's receipt of the request does not suffice for a "determination," nor is it enough that "within the relevant time period, the agency simply decide to later decide." *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013). Instead, "the agency must at least inform the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold under any FOIA exemptions." *Id.*

27. FOIA allows the agency to extend the 20-working-day deadline by up to 10 additional working days for "unusual circumstances" by providing written notice to the requester

that describes the "unusual circumstances" and provides the date on which the determination is expected to be issued. 5 U.S.C. § 552(a)(6)(B)(i); *see also* 40 C.F.R. § 2.104(a)(3), (f).

28. Such notice must provide the requester "an opportunity to limit the scope of the request so that it may be processed within [FOIA's 20-working-day] time limit or an opportunity to arrange with the agency an alternative time frame for processing the request or a modified request." 5 U.S.C. § 552(a)(6)(B)(ii).

29. EPA regulations further provide that "[i]f the 20 working-day period is extended, EPA will give the requester an opportunity to limit the scope of the request, modify the request, or agree to an alternative time-period for processing." 40 C.F.R. § 2.104(f).

30. FOIA also allows agencies to use "multitrack processing" to distinguish requests based on the amount of work or time they will require to process. 5 U.S.C. § 552(a)(6)(D).

31. EPA uses "three or more processing tracks" to distinguish between simple and complex requests. 40 C.F.R. § 2.104(d). EPA "may place [a] request in a slower track while providing the requester with the opportunity to limit the scope of the request to qualify for faster processing." *Id.*

32. FOIA's "multitrack processing" provision does not authorize agencies to extend the statutory deadline for issuing a determination on a request. 5 U.S.C. § 552(a)(6)(D). Thus, placing a FOIA request on a "complex" processing track does not change the agency's fundamental obligation to comply with that deadline.

33. If the agency fails to comply with FOIA's statutory deadline for issuing a determination on a request, the requester is deemed to have exhausted its administrative remedies and may file suit against the agency. *Id.* § 552(a)(6)(C)(i); *see also* 40 C.F.R. § 2.104(b).

34. The agency bears the burden to prove the legality of its actions under FOIA. 5 U.S.C. § 552(a)(4)(B).

35. FOIA grants jurisdiction to the court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id*.

36. Under FOIA, this Court may assess attorney fees and costs against the United States if EDF substantially prevails in this action. *Id*. § 552(a)(4)(E).

## FACTUAL BACKGROUND

### A. Clean Air Act Preemption Waivers

37. The Clean Air Act preempts states from adopting standards "relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). Since its enactment, the Clean Air Act has also included a waiver provision that allows California to adopt new motor vehicle emissions standards that are more protective than federal standards, allowing the state to protect Californians from air pollution from new cars and trucks. *See* 42 U.S.C. § 7543(b)(1) (directing that EPA "shall," subject to limited conditions, "waive application of" the prohibition on States and localities from enforcing their own emissions standards for new motor vehicles with respect to California, which had vehicle emissions standards in place prior to 1966). For more than half a century, EPA has granted preemption waivers for various vehicle emissions standards promulgated by California that are

more protective than federal standards, including: (1) Advanced Clean Cars I;[1] (2) Advanced Clean Trucks;[2] (3) Advanced Clean Cars II;[3] and (4) Omnibus Low NOx Regulations.[4]

38. The Clean Air Act also authorizes other states and the District of Columbia to adopt California's more protective vehicle emissions standards to reduce air pollution in their jurisdictions. 42 U.S.C. § 7507. Sixteen states—Colorado, Connecticut, Delaware, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, and Washington—and the District of Columbia have adopted all or some of California's vehicle emissions standards under this authority.

39. Despite the longstanding and time-tested nature of these authorities, and states' and the public's reliance on the substantial health protections they confer, the Executive Order indicates that the White House intends to "terminate" them. Recent EPA statements have confirmed that intent. In a January 24, 2025 motion to hold litigation concerning the Advanced Clean Cars I waiver in abeyance, EPA stated: "After the change in Administration, EPA's Acting Administrator has determined that the agency should reassess the basis for and soundness of the

---

[1] California State Motor Vehicle Pollution Control Standards; Notice of Decision Granting a Waiver of Clean Air Act Preemption for California's Advanced Clean Car Program and Within the Scope Confirmation for California's Zero Emission Vehicle Amendments for 2017 and Earlier Models, 78 Fed. Reg. 2,112 (Jan. 9, 2013); California State Motor Vehicle Pollution Standards; Advanced Clean Car Program; Reconsideration of a Previous Withdrawal of a Waiver of Preemption; Notice of Decision, 87 Fed. Reg. 14,332 (Mar. 14, 2022).

[2] California State Motor Vehicle and Engine Pollution Control Standards; Heavy-Duty Vehicle and Engine Emission Warranty and Maintenance Provisions; Advanced Clean Trucks; Zero Emission Airport Shuttle; Zero-Emission Power Train Certification; Waiver of Preemption; Notice of Decision, 88 Fed. Reg. 20,688 (Apr. 6, 2023).

[3] California State Motor Vehicle and Engine Pollution Control Standards; Advanced Clean Cars II; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 642 (Jan. 6, 2025).

[4] California State Motor Vehicle and Engine and Nonroad Engine Pollution Control Standards; The "Omnibus" Low $NO_X$ Regulation; Waiver of Preemption; Notice of Decision, 90 Fed. Reg. 643 (Jan. 6, 2025).

2022 reinstatement decision." Mot. of Fed. Respondents to Hold Briefing Schedule in Abeyance at 3, *Diamond Alt. Energy v. EPA*, No. 24-7 (U.S. Jan. 24, 2025), https://www.supremecourt.gov/DocketPDF/24/24-7/340121/20250124143604732_24-7%20Diamond%20Abeyance%20Mot_f.pdf.

### B. Light- and Medium-Duty Vehicle Multi-Pollutant Standards

40. On April 18, 2024, EPA finalized standards to reduce greenhouse gases and other harmful air pollutants for model year 2027-2032 light- and medium-duty vehicles. *See* Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles, 89 Fed. Reg. 27,842. These standards are a continuation of EPA's congressionally directed efforts over more than 50 years to set motor vehicle emissions standards to protect the public from the effects of harmful air pollution, including efforts since 2010 to reduce harmful climate pollution.

41. Despite EPA's finalization of these standards, and the public's reliance on this action, the Executive Order indicates that the White House seeks to undermine them.

### C. Heavy-Duty Vehicle NO$_X$ Pollution and Greenhouse Gas Reduction Standards

42. EPA has also adopted motor vehicle pollution reduction standards to reduce pollution from heavy-duty vehicles. On January 24, 2023, EPA finalized emissions standards to reduce nitrogen oxide ("NO$_X$") emissions from heavy-duty vehicles and engines starting in model year 2027. *See* Control of Air Pollution from New Motor Vehicles: Heavy-Duty Engine and Vehicle Standards, 88 Fed. Reg. 4,296. On April 22, 2024, EPA finalized greenhouse gas emissions standards for heavy-duty vehicles for model year 2027 and later. *See* Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29,440. Like EPA's light- and medium-duty pollution reduction standards, these standards continue decades of EPA's

11

efforts to protect the public from the effects of harmful air pollution, including efforts to reduce climate pollution.

43. Despite EPA's finalization of these standards, and the public's reliance on these actions, the Executive Order indicates that the White House seeks to undermine them.

### D. EDF's FOIA Request Regarding EPA's Vehicle Pollution Reduction Programs and Standards (Request No. 2025-EPA-03166)

44. On January 27, 2025, EDF submitted its FOIA Request, seeking: (i) all correspondence and records with or between sixteen EPA transition team members and political appointees related to changes to Clean Air Act vehicle pollution reduction programs; and (ii) all correspondence between any of those sixteen individuals and any external, non-governmental stakeholders (including but not limited to seven specific industry stakeholders and their representatives) related to changes to Clean Air Act vehicle pollution reduction programs. *See* Ex. A at 1-2. EDF provided a list of eighteen search terms to allow EPA to narrow its records search. *Id.* at 2.

45. Given the new administration's fast-moving efforts to weaken EPA's vehicle pollution reduction standards and programs, the significant public impacts anticipated if those efforts are successful, and EDF's strong interest in understanding and publicly sharing the basis for any such changes, EDF requested expedited processing of the FOIA Request. *Id.* at 3-8; *see also* 5 U.S.C. § 552(a)(6)(E)(i)(I); 40 C.F.R. § 2.104(g).

46. EDF also requested a waiver of fees associated with the FOIA Request. Ex. A at 8-9; *see also* 40 C.F.R. § 2.107(n).

47. On January 28, 2025, EDF received a form letter from EPA acknowledging receipt of the FOIA Request. The letter provided no estimate of when EPA would issue a

12

determination on the FOIA Request, merely stating that the FOIA Request "was assigned for processing." Ex. B.

48. On February 10, 2025, EDF received a letter from EPA denying its request for expedited processing, asserting that EDF's request did not speak to any urgency to inform the public or identify any expectation of an imminent threat to life or safety. *See* Ex. D at 6 (Letter from T. Klosterman, EPA, to E. Murphy, EDF).

49. The same day, by separate letter, EPA granted EDF's fee waiver request. Ex. E (Letter from Lee Hagy, EPA, to Erin Murphy, EDF).

50. On February 11, 2025, EDF received an email from EPA stating that the FOIA Request was "re-assigned for processing" to the "Office of the Administrator FOIA Program." Ex. F (Email from Larry Johnson, EPA, to Erin Murphy, EDF).

51. On February 19, 2025, EDF received an email from EPA stating that the FOIA Request was being placed on the "complex" processing track with an estimated completion date of May 30, 2025—three months after the statutory deadline for EPA to issue a determination on the FOIA Request. Ex. C at 1. EPA informed EDF that an "initial review of [its] request indicates a need to consult with, and collect records from, multiple components of the Agency." *Id.*

52. The February 19 email did not assert that "unusual circumstances" prevented EPA from issuing a timely determination on EDF's request and did not claim to be taking a 10-working-day extension under the statute and regulations. *See id.*

53. The February 19 email did not inform EDF of "the scope of the documents that the agency will produce" or "the scope of the documents that the agency plans to withhold under

13

any FOIA exemptions." *Citizens for Responsibility & Ethics in Wash.*, 711 F.3d at 186; *see* Ex. C at 1.

54. The February 19 email was not EPA's determination on the FOIA Request.

55. Nor did the February 19 email extend EPA's deadline for issuing a determination on the FOIA Request.

56. While the February 19 email provided an estimated completion date of May 30, 2025, EDF did not agree to that date as an alternative time period for EPA to process the FOIA Request.

57. EPA did not provide a determination on the FOIA Request within FOIA's 20-working-day deadline, which lapsed on February 26, 2025. *See* 5 U.S.C. § 552(a)(6)(A)(i); 40 C.F.R. § 2.104(a)(1).

58. EPA did not provide EDF with written notice that it was extending that deadline. *See* 5 U.S.C. § 552(a)(6)(B)(i); 40 C.F.R. § 2.104(a)(3), (f).

59. To date, EPA has not issued a determination on the FOIA Request or produced any records in response to the FOIA Request.

60. EPA's evaluation of its vehicle pollution reduction programs and standards as directed by the Executive Order is ongoing, and the agency's failure to respond to the FOIA Request within the required timeframe has prevented EDF, its members, and the general public from being fully informed and able to meaningfully engage on this issue.

## CLAIM FOR RELIEF
## VIOLATION OF THE FREEDOM OF INFORMATION ACT

61. EDF incorporates by reference all preceding paragraphs.

62. Under FOIA, EDF has a statutory right to have EPA process the FOIA Request in a timely manner.

63. Under FOIA, EDF also has a statutory right to obtain all non-exempt records responsive to the FOIA Request.

64. EPA failed to comply with the statutory deadline for issuing a determination on EDF's FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

65. EPA failed to make a determination on the FOIA Request from which EDF could exercise its statutory right of appeal. *See id*.

66. EPA failed to timely produce all non-exempt records responsive to the FOIA Request. *See id.* § 552(a)(3)(A).

67. Unless enjoined by this Court, EPA will continue to violate EDF's legal rights to timely receive a complete set of responsive documents sought through its FOIA Request.

68. It is in the public interest for the Court to issue an injunction requiring EPA's immediate compliance with FOIA.

## REQUEST FOR RELIEF

EDF requests the following relief from the Court:

A. Declare EPA's failure to provide EDF with a determination on its FOIA Request within FOIA's deadlines unlawful.

B. Declare EPA's failure to make the requested records promptly available to EDF unlawful.

C. Order EPA to provide EDF with all responsive records immediately, at no charge to EDF, and in unredacted form unless an exemption is applicable and properly asserted.

D. Order EPA to provide a *Vaughn* index of any responsive records or portions of records withheld under the claim of a FOIA exemption. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

E.  Award EDF its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412, and any other applicable law.

F.  Grant any further relief as the Court deems just and proper.

Respectfully submitted on March 3, 2025.

> /s/  *Samantha R. Caravello*
> SAMANTHA R. CARAVELLO (Bar ID CO0080)
> NATHANIEL H. HUNT (Bar ID CO0107)
> Kaplan Kirsch LLP
> 1675 Broadway, Suite 2300
> Denver, CO  80202
> Telephone: (303) 825-7000
> E-mail: scaravello@kaplankirsch.com
>           nhunt@kaplankirsch.com
>
> ERIN MURPHY (Bar ID D00532)
> Environmental Defense Fund
> 555 12th St NW, Suite 400
> Washington, D.C. 20004
> Telephone: (202) 572-3525
> E-mail: emurphy@edf.org
>
> *Counsel for Environmental Defense Fund*